IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICKY LEE TAYLOR,                  )
                                   )
            Plaintiff,             )
                                   )
v.                                 )     CIVIL ACTION NO. 2:05cv325-VPM
                                   )     [WO]
MARSHALL WILLIAMS, JR.             )
                                   )
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

In this 42 U.S.C. § 1983 action, plaintiff Ricky Lee Taylor ["Taylor"], who is currently incarcerated at Taylor Correctional Institution in Perry, Florida (Doc. # 1, p. 2), contends that the sheriff of Barbour County, Alabama, and employees of the Barbour County Sheriff's Department violated his constitutional rights while he was a prisoner at the Barbour County Jail (Doc. # 1).[1]  Pursuant to this court's order (Doc. # 4), the defendants responded by filing a special report denying Taylor's factual and legal assertions and providing evidence in support of their positions that establish that no material factual dispute exists and they are entitled to judgment as a matter of law.  (Doc. # 8).

---

[1]Taylor contends that the defendants breached the Eighth Amendment by subjecting him to cruel and unusual punishment, namely by ignoring his medical needs and by refusing to give him food (Doc. # 1).  The defendants note, however, that because Taylor had not been convicted during the period in which the alleged events occurred, his claim is governed by the Fourteenth Amendment (Doc. # 8-1, p. 8 n.5).  Regardless, the analysis is the same.  *See*, *e.g.*, *Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1231 (M.D. Ala. 2002) (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) for the proposition that " in the context of a claim implicating the denial of a basic need of a pretrial detainee, such as food, water, or medical care, the Eleventh Circuit has treated the eighth- and fourteenth-amendment protections as coextensive").

The court subsequently informed Davis that the defendants' report would be treated as a motion for summary judgment and ordered Davis to respond in a manner consistent with Rule 56 of the Federal Rules of Civil Procedure, the requirements of which the court fully explained (Doc. # 12).   Davis responded appropriately, and the court now addresses the defendants' summary judgment motion.  For the reasons discussed below, the motion should be granted.

## II.   STANDARD OF REVIEW

In order to survive the defendants' motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324.

A plaintiff's conclusory, unsupported and self-serving allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the adverse parties upon their properly supported motion.  *Celotex Corp.*, 477 U.S. at 322; *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607

2

(11th Cir. 1987).  Where the evidentiary materials before the court indicate that there is no genuine issue of material fact and that a party moving for summary judgment is entitled to such judgment as a matter of law, the entry of summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

The law is well settled that a *pro se* plaintiff should not be held "to strict accountability of compliance with the rules of procedure," and a *pro se* plaintiff's complaint should be construed more leniently than formal pleadings drafted by attorneys.  *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (*citing Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).  Nevertheless, a *pro se* litigant does not escape the essential burden under the summary judgment standard of establishing the existence of a genuine issue of material fact in order to avert summary judgment.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's *pro se* status does not mandate the court's disregard of elementary principles of production and proof in a civil case.

## III.   DISCUSSION

### A.   *Taylor's Allegations*

According to Taylor's complaint, at approximately 11:30 a.m. on 30 August 2003, while confined at the Barbour County Jail, he fell from the top bunk of his bed onto the floor and injured his back (Doc. #1, p. 2).  For approximately two hours thereafter, defendant Callie Heath ["Heath"], at the relevant time an employee of the Barbour County Jail (Doc. # 8-5, ¶¶ 2-3), ignored Taylor's pleas for medical assistance (Doc. # 1, pp. 2-3).

3

Taylor was then transported to the hospital, where he complained to the doctor that he "could not feel anything from [his] waist down and [his] upper body was hurting bad, [his] head also, and [he] could not move [his] neck." *Id.* at 3.  The doctor released Taylor but instructed him to see another doctor a few days later. *Id.*

Essentially, Taylor contends that for the next 45 days, until he was released from the jail on 15 October, the jail's staff and administration ignored his medical needs and withheld food from him. *See generally*, *id.*  Predictably, the defendants deny any wrongdoing and contend that Taylor's medical and nutritional needs were adequately met (Doc. # 8). Although the defendants raise several legal arguments in support of a judgment in their favor, the court need only address Taylor's evidence, which is insufficient to establish a violation of his constitutional rights.

**B.    *Analysis***

As an initial matter, there is no evidence before the court that food was ever withheld from Taylor; therefore, the court should summarily reject Taylor's allegations to the contrary and find that the defendants are entitled to judgment as a matter of law on this claim.  All that is left for the court to determine is whether a dispute exists regarding a fact material to his claim that the defendants ignored his medical needs and, if not, whether the defendants are entitled to judgment as a matter of law.

To succeed on his claim, Taylor must satisfy a two-part test to prove that the defendants acted or failed to act with deliberate indifference to Taylor's serious medical

4

needs.  *See*, *e.g.*, ***Brown v. Johnson***, 387 F.3d 1344, 1351 (11th Cir. 2004).  For purposes of summary judgment, Taylor must as an initial matter offer evidence "of an objectively serious medical need," which is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  ***Kelley v. Hicks***, 400 F.3d 1282, 1284, 12 84 n.3 (11th Cir. 2005) (quoting the definition of "serious medical need" from ***Farrow v. West***, 320 F.3d 1235, 1243 (11th Cir. 2003)).  "In either case, 'the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.'" ***Brown***, 387 F.3d at 1351 (noting that HIV and hepatitis meet the definition).

If an inference exists that Taylor had a serious medical need, he must then demonstrate that the defendants subjectively (1) were aware of a risk of serious harm; (2) "disregard[ed] . . . that risk; and (3) by conduct that is more than mere negligence." *Id.* (citing ***McElligott v. Foley***, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Viewed in the light most favorable to Taylor, the evidence fails to create an inference that he suffered from a medical condition meeting the definition of "serious medical need". As Taylor himself acknowledged to defendant jail nurse Johna Cotton ["Cotton"], numerous diagnostic examinations performed on and after the date of the alleged incident, including x-rays of Taylor's cervical spine, left forearm, right forearm, right shoulder, pelvis, right hip, left hip, chest and lumbar spine (Pl's Ex. R.); computerized axial tomographies of his head and cervical spine, *id.*; and an MRI of his lumbar spine (Pl's Ex. U) returned normal results, aside from noting "old" degenerative changes to his cervical spine (Pl's Ex. R; Def's Ex.

25).[2]

The evidence establishes that at most Taylor experienced a muscle spasm in his back for which he received medication and crutches (Def's Ex. 25).  Taylor contends that he is presently confined to a wheelchair (Doc. # 1, p. 2), yet he has failed to offer this statement under penalty of perjury or other evidence of its truth.  Moreover, he has failed to submit any evidence that during the relevant time he suffered from any condition that could have led to his alleged immobility.  Although a fall from a top bunk onto a concrete floor *could* result in a serious injury, the evidence before the court allows for only one inference: in this case, it did not.

Assuming Taylor could establish the existence of a "serious medical need," the evidence before the court does not allow for an inference that any of the defendants knew that Taylor was at risk of serious harm or disregarded that risk.  The evidence indicates that Taylor was transported to the hospital after he fell from the top bunk (Pl's Exs. G, I, Q, R; Def's Ex. 19).   He underwent numerous tests and was discharged with a prescription that Taylor does not contend went unfilled (Pl's Ex. R).  The evidence further indicates that the defendants promptly responded to subsequent requests for medical care (Pl's Exs. K, M, N; Def's Exs. 23, 25, 26, 27), and Taylor's singular, vague, conclusory assertion to the contrary is insufficient to allow for an alternative inference (Pl's Ex. L).[3]

---

[2]No evidence in the record suggests that any treatment was ordered for this degenerative condition.

[3]Taylor submitted two sworn statements in support of his complaint.  The first is the general allegation referred to *supra* that he had submitted numerous "request[s] and grievances to jail staff

Consequently, Taylor has failed to create an inference that the defendants violated his constitutional rights.

## III.   CONCLUSION

Therefore, it is

ORDERED that the defendant's Motion for Summary Judgment be GRANTED. Taylor's claims are therefore DISMISSED with prejudice, and each party shall bear his own expenses.

---

between August 30th 2003 thru [sic] October 15, 2003," to which the jail staff failed to respond (Pl's Ex. L).  As already noted, this vague assertion is insufficient to create a factual dispute.

The second includes the following factual statements from Taylor: (1) I was taken to Lakeview Hospital by Ambulance on 8-30-2003.  Accompanied by [sic] Officer Billy Don Curry; (2) I, Ricky Taylor, on 9-23-2003 gave an envelope to officer Billy Don Curry at 8:30 pm. to be placed in the mail box of Ms. Jean the jail administrator concerning my injury accident [sic] and to in form [sic] her about medical attention and law suit [sic] I'm in the process to file [sic] against her, (Ms. Jean), officers and Barbour County Jail; and (3) I was taken to see Dr. Tarek A. Nessoulie, M.D., on September 25, 2003 at Eufalula Orthopedic Center in Eufaula, Alabama, accompanied by Officer Eddie Harris (Pl's Ex. Q).

In addition, the second sworn statement included two statements from other inmates, presumably, who did not sign under penalty of perjury.  Regardless, their ostensible testimony offers Taylor no assistance.  Alton Smith stated that he "saw Ricky Taylor fall of [sic] the top bunk in the Barbour County Jail."  *Id.*  Tom Anderson, Alton Smith, Derrick Russaw and Reggie Mahorn all signed under the following statement: "I know that I not seen Ricky Taylor walk, run or sit in day room or take a shower since he (Ricky Taylor) fell off top bunk in cell . . .."  *Id.*

These statements constitute the only testimonial evidence on Taylor's behalf.  The remainder of the evidence Taylor provided is documentary.

7

DONE this 3rd day of August, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE